### CLENDENNING vs. CLENDENNING & AL.

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court.
The plaintiff resists the claims on the succession of his father, of a woman whom he married, in the life time of his wife the plaintiff's mother: and of the children born from this

A woman, who was deceived by a man, who represented himself as single, and her children born while the deception lasted, are entitled to all the rights of a legitimate wife and children.

union. The defendants contend, that notwith-
standing the plaintiff's father had a lawful wife,
at the time of the second marriage, as the wo-
man he last married, was in good faith, at the
time of the marriage, and ever since, at least
till after the birth of the last child she had by
him; her marriage has its civil effects, and she,
and her children, the present defendants, are
entitled to all the advantages the law gives to a
lawful wife and children. Their case was sup_
ported in the district court, and the plaintiff ap-
pealed.

There seems to be no dispute on the question
of law. The woman, who was deceived by a
man, who represented himself as single, and his
children begot while the deception lasted;
are *bona fide* wife and children, and as such,
entitled to all the rights of a legitimate wife
and issue.

It is, however, shewn, that the first child was
born within four months from the celebration
of the marriage. This may be evidence of *too
much faith* in the mother, but as a lawful mar-
riage, cures an irregularity of this kind; *a bona
fide* one on the part of the deceived woman,
must have the same effect.

It is next urged, that the other children, four
of them, were born after the *deception* ceased,

CLENDENNING
*vs.*
CLENDENNING
& AL.

and consequently the good faith of the mother had ceased. If this be the fact, the plaintiff must, as to such children, succeed. For it is the duty of the deceived woman, as soon as she became satisfied with the existence and consequent rights of the first wife, to forbear a violation of them.

The evidence of the knowledge of the existence of the first wife by the mother, is said to result from the depositions of several witnesses, who testify that they frequently conversed in the house of the plaintiff's father (the deceased,) with him, about his first wife, and the plaintiff, their common child .But except as to two of the witnesses, this circumstance has no weight, because there is nothing from the testimony that enables us to conclude any of these conversations took place, in the presence or hearing of the woman.

The only witnesses who testify to any conversation of this kind, from which the woman might have been undeceived, are Kilpatrick and Hodge.

Kilpatrick says, he was introduced by the plaintiff's father to this woman, *as being acquainted with his wife* in Tennessee; the plaintiff's mother.

East'n. District.
*March* 1825.

CLENDENNING
*vs.*
CLENDENNING
& AL.

Hodge deposes, that when he was about leaving the deceased's house, he wished to give him fifty dollars, to be applied to the education of his son, the plaintiff then in Tennessee, and the woman objected thereto.

The testimony of Hodge affords no support to the plaintiff, because it only shews the woman's knowledge of the existence of a son of the person she married; who might be an illegitimate one, or one whose mother was dead.

The counsel for the defendant has found some difficulty in destroying or weakening the effect of Kilpatrick's testimony.

The case was submitted to a jury, and they could not agree on a verdict.

The judge *a quo* was of opinion, the proof of knowledge offered was not sufficient. The weight of the opinion of the first judge, great with us on questions of fact, is greatly diminished by the circumstance, that he acted on *written* testimony. He did neither hear nor see the witnesses deposing. So he enjoyed no advantage that we do not—and although every one of us is very ready cheerfully to disown any superiority over any of the gentlemen, who preside in the courts from which appeals come up, we cannot help being conscious of the ad-

CLENDENNING
*vs.*
CLENDENNING
& AL.

vantage this tribunal possesses over every other in the state, in the number of its members.

On a question like this, the proof must be irrefragable. Nor is the circumstance of this woman having had Kilpatrick introduced to her, (by the person whom she did then confide in as her husband, and the lawful father of her children,) as a person *being acquainted with his wife in Tennessee*, irrefragable proof, that she then received such evidence of the fact of the existence of his first wife. At first blush, it seems, this question considered in the abstract ought to be decided in the affirmative.

But—The witness appears to have been a traveller from Tennessee, whose natural language was the English, and we have nothing from which we may conclude he knew a word of French.

The deceased's natural language was also the English. He had been some time in Louisiana, and with what accuracy he spoke the French language, we are without information.

The woman's natural language is the French —of the degree of her knowledge of the English, we are also without information.

The witness does not tell us in what language

this introduction was given.   We must con-
clude it was such a language the witness and
the other two persons understood.   The Eng-
lish being the vernacular language of two of
these three persons, it is most probable it was
the language spoken—as there is nothing from
which we may assume that the witness spoke
French.

The witness relates a conversation which
took place upwards of fourteen years before the
time he delivered his testimony.   At that time,
the deceased had been about five years from
Tennessee, and had been married for the se-
cond time, but *eight or nine months.*

There is no evidence that before her marri-
age, the woman was so conversant with persons
who spoke English, as to have acquired that
language.   The parish in which she resided
was one, the population of which is almost ex-
clusively French.

The testimony is silent, as to the conduct,
behaviour or answer of the woman, on receiv-
ing then, the first intimation of a fact, in which
she was so materially interested.   The counsel
urges, that in the absence of any account, we
must presume it was received without emotion,
and this is presented as a violent presumption:

East'n. District.
*March* 1825.

CLENDENNING
*vs.*
CLENDENNING
& AL.

East'n District.
March 1825.

CLENDENNING
vs.
CLENDENNING
& AL.

which if not counteracted, must be received, and stand as evidence of anterior knowledge—anterior even to the marriage.

A knowledge anterior to the marriage cannot well be believed on the testimony before us. For to what use would such a marriage be *to the woman?* A man might seek it to attain to the possession of a woman he could not otherwise procure. But men have so much less charms, or so much more liberality, that women are seldom put to such streights.

We therefore conclude, that there is no evidence of a knowledge anterior to the marriage, or to the conception of the first child, who was born *four* months after it, and he must be considered as legitimate.

The legitimacy of the other children, depends on the want of the knowledge of the first marriage, in the mother at the time of their conception.

We think the testimony is not sufficient to establish this knowledge. It cannot be assumed from any part of the testimony, except the part of that conversation related by Kilpatrick.

The deceased had been anxious to conceal every thing that concerned him, and for that purpose had changed his name, It is so very

improbable that the woman, would, without emotion, hear herself reduced from the rank of a wedded dame, to that of a harlot, on Kilpatrick being introduced to her; that this fact must be proven beyond the probability of a doubt before assenting to it.

East'n. District.
*March* 1825.

CLENDENNING
*vs.*
CLENDENNING
& AL.

Kilpatrick, it appears, does not give the *very words* used by the husband. Indeed at the distance of fourteen years and upwards it would be strange that he could. It is more likely the woman understood he was spoken of as a man who *had been* acquainted with the first wife. A mistake in the tense may well happen, among persons whose native language is not the same.

The profligacy of the man, who without shame or necessity, did proclaim his own turpitude, must be believed, because it is clearly proved. As to the woman, the fact rests on a solitary and very doubtful instance. The jury thought it so doubtful, that they could not pronounce either way. The judge *a quo* thought it his duty to pronounce the legitimacy. We are clear he ought not to have come to the opposite conclusion.

If the case of the woman alone, was now before us, we might consider whether justice would

East'n District
*March* 1825,

CLENDENNING
*vs.*
CLENDENNING
& AL.

not require a re-examination of it; but the children were most certainly innocent; they are possessed of a judgment which declares them legitimate, and we could not have declared them otherwise. If there be a defect of proof the fault is not theirs.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*M·Caleb* for the plaintiff, *Cuvillier* for the defendants.